**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

SHERRY BLACKBURN, *et al., on behalf of
themselves and all others similarly
situated,*

                    Plaintiffs,

        v.                                Case No: 3:22-cv-146-DJN

A.C. ISRAEL ENTERPRISES, INC. d/b/a
INGLESIDE INVESTORS, *et al*,

                    Defendants.

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Sherry Blackburn, Willie Rose, Elwood Bumbray, George Hengle, Regina Nolte, Jo Ann Falash, John Tucker, and Emily Murphy ("Plaintiffs"), on behalf of themselves and the Settlement Class Members, by counsel, submit this Memorandum in Support of their Motion for Preliminary Approval of the Class Settlement.

## I.      INTRODUCTION

This case arises from the making and collection of high-interest loans from online lending companies named Golden Valley Lending, Silver Cloud Financial, Majestic Lake Financial, and Mountain Summit Financial (the "Tribal Lending Entities" or "TLEs"). The TLEs were formed by the Habematolel Pomo of Upper Lake (the "Tribe"), a federally recognized Native American tribe. Four of the Plaintiffs here and four other consumers previously filed class action litigation against the Tribe's Executive Council and two non-tribal business partners, Scott Asner and Joshua Landy, behind the TLEs' operations. *See Hengle v. Asner*, No. 3:19-cv-250-DJN (E.D. Va.). Following an appeal to the Fourth Circuit that affirmed this Court's denial of the *Hengle* defendants' motions to compel arbitration and motions to dismiss, as well as a certiorari petition

to the Supreme Court, the *Hengle* litigation culminated in a nationwide class action settlement that included, among other relief: (1) $450 million of debt cancellation; and (2) creation of a $39 million common fund to be distributed to consumers who repaid unlawful amounts. *Id.*, ECF No. 185-1. The Court approved the *Hengle* settlement on October 25, 2022. *Id.*, ECF No. 230.

During the *Hengle* litigation, Plaintiffs discovered that several other non-tribal individuals and entities were involved in establishing, financing, supporting, and continuing the TLEs' lending enterprise. In return for their support, these individuals and entities reaped significant financial benefits. Thus, while the *Hengle* litigation remained pending, on March 15, 2022, Plaintiffs brought the instant action on behalf of themselves as individuals and all others similarly situated against Defendants, alleging claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.*, and state law. (Compl., ECF No. 1.) Specifically, Plaintiffs brought claims against eight groups of Defendants: (1) A.C. Israel Enterprises LLC d/b/a Ingleside Investors, Richard Investors, and Greg Warner (the "A.C. Israel Defendants"); (2) Ferrell Capital, LLC and Seville LTD (the "Seville Defendants"); (3) Monu Joseph, Joseph Investment, LLC, Joseph NPA Investment, LLC, and E Opportunities, LLC (the "Joseph Defendants"); (4) Skye, LLC ("Skye"); (5) Cabbage City, LLC ("Cabbage City"); (6) Benjamin Gravley, Signal Light, LLC, and Hvmken, LP (the "Gravley Defendants"); (7) George Kellner and Kellner Capital, LP (the "Kellner Defendants"); and (8) Amit Raizada, Spectrum Business Ventures, Inc., and Raizada Group, LLP (the "Raizada Defendants"). (Am. Compl., ECF No. 79.)

As soon as Plaintiffs filed this case, Defendants vigorously defended against it, including by filing nine motions to dismiss that challenged Plaintiffs' claims on statute of limitations grounds and for failure to state a claim. (ECF Nos. 95-96, 98, 101, 116, 145, 147, 149-150.) The Court denied those motions on July 24, 2023, finding that Plaintiffs had sufficiently alleged facts to

survive a limitations defense at this stage and that the allegations supported RICO and state law liability against all Defendants. (ECF No. 177.)

After over a year of litigation and over three years of litigation in the parallel *Hengle* case, which included decisions on significant questions of tribal sovereign immunity, the enforceability of state consumer protections, and RICO liability, Plaintiffs and Defendants entered into a Stipulation and Agreement of Settlement ("Settlement Agreement"), which the parties have attached to this Motion for Preliminary Approval. The proposed settlement affords significant, additional relief to the same class members from the *Hengle* litigation, namely: (1) the creation of a $25,535,929.00 million common fund to be distributed to consumers who repaid unlawful amounts; and (2) Defendants' agreement not to support the TLEs for at least three (3) years or to aide in the collection of any unlawful debts from the TLEs. (Settlement Agreement §§ 3.3.a-c.) This relief further builds on the significant, trailblazing relief approved by this Court for the same consumer class in *Hengle*, and it follows a recent trend of similar relief approved in this District.[1]

Under Federal Rule of Civil Procedure 23, Plaintiffs and Defendants now seek preliminary approval of the proposed class action settlement. The parties request that the Court preliminarily certify the proposed class and the proposed class settlement by entering the proposed Order of Preliminary Approval of Class Action Settlement. A final motion and proposed order supporting the fairness of the proposed class action settlement will be submitted: (1) after Settlement Class Members have received notice providing them an opportunity to object or opt-out; and (2) before

---

[1] *See Gibbs v. TCV, V, LLP*, No. 3:19-cv-00789, Dkt. 95 (E.D. Va. Mar. 29, 2021) (granting final approval of a class settlement resulting in: result in: (1) the creation of a settlement fund in the amount of $50,050,000.00; and (2) cancellation of approximately $383,000,000.00 in debts); *Gibbs v. Plain Green, LLC*, No. 3:17-cv-495, Dkt. 141 (E.D. Va. Dec. 13, 2019) (granting final approval of a class settlement resulting in: result in: (1) the creation of a settlement fund in the amount of $53,000,000; and (2) cancellation of approximately $380,000,000.00 in debts).

the Court's Final Fairness Hearing.  For the reasons explained below, the proposed class action settlement is reasonable, fair, and adequate, and the Court should preliminarily approve it.

## II.    SETTLEMENT TERMS

### a.    *The Settlement Class*

Under the Settlement Agreement, the parties agreed to resolve the claims of a nationwide class ("Settlement Class") defined as:

> All consumers residing within the United States who executed loan agreements with Golden Valley Lending, Inc., Silver Cloud Financial, Inc., Majestic Lake Financial, Inc., or prior to February 1, 2021, with Mountain Summit Financial, Inc.

(Settlement Agreement § 3.2.)  This is the same Settlement Class that this Court approved in *Hengle*.  No. 3:19-cv-260, ECF No. 230.  Based on data provided in *Hengle*, Plaintiffs estimate that the Settlement Class comprises approximately 555,000 Settlement Class Members.

### b.    *Consideration to the Settlement Class*

The proposed class action settlement provides significant, additional cash payments to consumers nationwide.  Plaintiffs achieved the proposed settlement even though several Defendants moved to dismiss the case and have continued to deny sufficient involvement in the alleged unlawful lending enterprise to be found liable.  Plaintiffs also recognized that Defendants are mostly individuals and entities formed by those individuals, whose financial situations threaten the options and resources available for class settlement, as well as the collection of any ultimate judgment.  Despite this obstacle, Plaintiffs negotiated a settlement that will provide a substantial, multi-million-dollar financial benefit to consumers nationwide, in addition to the significant benefits afforded to those consumers by the *Hengle* settlement.

Specifically, Defendants will make monetary payments collectively totaling $$25,535,929.00, which will be distributed to the Settlement Class Members.  (Settlement Agreement § 3.3.a.)  Of this total amount, the A.C. Israel Defendants will contribute $6 million;

4

the Seville Defendants will contribute $1.6 million; the Joseph Defendants will pay $3 million; Skye will pay $150,000; Cabbage City will pay $1,524,724.00; the Gravley Defendants will pay $60,000; the Kellner Defendants will pay $4,269,293.00, and have guaranteed the payment of an additional $5,431,912 from other investors; and the Raizada Defendants will pay a total of $3.5 million.

As outlined in the Settlement Agreement, payments from the Fund will be allocated using a tiered formula after payment of service awards to Plaintiffs,[2] attorneys' fees, and costs, as approved by this Court:

> Tier 1:  The dollar amount of all payments made by each Settlement Class Member in Arizona, Arkansas, Colorado, Connecticut, Idaho, Illinois, Indiana, Kansas, Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, South Dakota, Vermont, Virginia, and Wisconsin so long as the Settlement Class Member paid the principal amount of his or her loan.

> Tier 2:  The dollar amount of payments made above the legal interest limits if the original principal amount was repaid and if the Settlement Class Member resided in Alabama, Alaska, California, Delaware, Florida, Georgia, Hawaii, Iowa, Louisiana, Maine, Maryland, Michigan, Mississippi, Missouri, Nebraska, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Washington, Washington D.C., West Virginia, or Wyoming at the time the Settlement Class Member took out the loan; and

> Tier 3:  Settlement Class Members in Nevada and Utah will not receive cash payments.

Settlement Class Members in Tier 1 or Tier 2 who repaid the principal amount borrowed will receive a cash award based on a *pro rata* calculation rounded down to the nearest cent.  (*Id.*

---

[2] The Court approved this same tiered formula in *Hengle*.  No. 3:19-cv-250-DJN, ECF No. 230 (E.D. Va. Oct. 25, 2022).  Other courts in this District have also approved similar formulas.  *See, e.g.*, *Gibbs v. TCV, V, LLP*, No. 3:19-cv-789, Dkt. 95 (E.D. Va. Mar. 29, 2021); *Gibbs v. Plain Green, LLC*, No. 3:17-cv-495, Dkt. 141 (E.D. Va. Dec. 13, 2019); *see also generally Turner v. ZestFinance, Inc.*, No. 3:19-cv-293 (E.D. Va.).

§ 3.4.b.iii.1.)  In the event any Settlement Class Member took out more than one loan during the class period, his or her claim amount will be calculated by determining the claim amount for each loan and adding them together.  (*Id.* § 3.3.b.ii.)

The relief provided by the proposed class action settlement is significant.  Most consumers will receive a cash payment in addition to the cash payments made pursuant to the *Hengle* settlement, and many will benefit from Defendants' agreement to halt their support of the TLEs and the collection of any of the unlawful debts.  Importantly, Class Members will receive payments without needing to submit a claim form, prove any harm, or take any affirmative action.

### c.     *Class Action Fairness Notice*

Defendants will provide notice of the proposed settlement under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA").  The CAFA Notice will be sent to the Attorney General of the United States and to the attorneys general of all states and the District of Columbia and all U.S. territories.  (Settlement Agreement § 5.3.d.)  To account for the deadlines under governing law, the parties request that the Court schedule the Final Approval Hearing at least 90 days after the CAFA Notice is mailed.

### d.     *Attorneys' Fees, Costs, and Service Awards*

Class Counsel will apply for attorneys' fees and costs in an amount approved by the Court, but not to exceed $8,511,967.00, or one-third of the monetary consideration paid by Defendants. (*Id.* § 3.5.)  Plaintiffs also will apply for a service award of $15,000.00 each for their role as class representatives to compensate them for their efforts in prosecuting this case, including retaining counsel and assisting in motions practice and settlement.

### e.     *Release of Claims*

In return for this consideration, Settlement Class Members will provide the following release to the Released Parties:

A.C. Israel Released Parties. Each Plaintiff and each Settlement Class Member, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, shall have fully, finally and forever released and discharged the A.C. Israel Released Parties from any and all rights, duties, obligations, demands, actions, causes of action, liabilities, claims, grievances, suits, losses, damages, costs, fees, expenses, and controversies, whether arising under local, state, tribal, foreign, territorial or federal law (including, without limitation, under any consumer protection or unfair and deceptive practices laws) or equity, whether by constitution, statute, rule, regulation, any regulatory promulgation, contract, tort, common law, or any other theory of action, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, matured or un-matured, contingent or fixed, accrued or unaccrued, punitive or compensatory, choate or inchoate, liquidated or unliquidated, based on any fact known or unknown, including without limitation those that arise out of or relate in any way to any or all of the claims, causes of action, acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged, described, set forth, referred to, or asserted in the Action, as well as including any claims known or unknown that each Settlement Class Member has or ever had against the A.C. Israel Released Parties.

Cabbage City Released Parties. Each Plaintiff and each Settlement Class Member, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, shall have fully, finally and forever released and discharged the Cabbage City Released Parties from any and all rights, duties, obligations, demands, actions, causes of action, liabilities, claims, grievances, suits, losses, damages, costs, fees, expenses, and controversies, whether arising under local, state, tribal, foreign, territorial or federal law (including, without limitation, under any consumer protection or unfair and deceptive practices laws) or equity, whether by constitution, statute, rule, regulation, any regulatory promulgation, contract, tort, common law, or any other theory of action, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, matured or un-matured, contingent or fixed, accrued or unaccrued, punitive or compensatory, choate or inchoate, liquidated or unliquidated, based on any fact known or unknown, including without limitation those that arise out of or relate in any way to any or all of the claims, causes of action, acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged, described, set forth, referred to, or asserted in the Action, as well as including any claims known or unknown that each Settlement Class Member has or ever had against the Cabbage City Released Parties.

Gravley Released Parties. Each Plaintiff and each Settlement Class Member, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, shall have fully, finally and forever released and discharged the

Gravley Released Parties from any and all rights, duties, obligations, demands, actions, causes of action, liabilities, claims, grievances, suits, losses, damages, costs, fees, expenses, and controversies, whether arising under local, state, tribal, foreign, territorial or federal law (including, without limitation, under any consumer protection or unfair and deceptive practices laws) or equity, whether by constitution, statute, rule, regulation, any regulatory promulgation, contract, tort, common law, or any other theory of action, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, matured or un-matured, contingent or fixed, accrued or unaccrued, punitive or compensatory, choate or inchoate, liquidated or unliquidated, based on any fact known or unknown, including without limitation those that arise out of or relate in any way to any or all of the claims, causes of action, acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged, described, set forth, referred to, or asserted in the Action, as well as including any claims known or unknown that each Settlement Class Member has or ever had against the Gravley Released Parties.

<u>Joseph Released Parties</u>. Each  Plaintiff and each Settlement Class Member, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, shall have fully, finally and forever released and discharged the Joseph Released Parties from any and all rights, duties, obligations, demands, actions, causes of action, liabilities, claims, grievances, suits, losses, damages, costs, fees, expenses, and controversies, whether arising under local, state, tribal, foreign, territorial or federal law (including, without limitation, under any consumer protection or unfair and deceptive practices laws) or equity, whether by constitution, statute, rule, regulation, any regulatory promulgation, contract, tort, common law, or any other theory of action, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, matured or un-matured, contingent or fixed, accrued or unaccrued, punitive or compensatory, choate or inchoate, liquidated or unliquidated, based on any fact known or unknown, including without limitation those that arise out of or relate in any way to any or all of the claims, causes of action, acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged, described, set forth, referred to, or asserted in the Action, as well as including any claims known or unknown that each Settlement Class Member has or ever had against the Joseph Released Parties.

<u>Kellner Released Parties</u>. Each  Plaintiff and each Settlement Class Member, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, shall have fully, finally and forever released and discharged the Kellner Released Parties from any and all rights, duties, obligations, demands, actions, causes of action, liabilities, claims, grievances, suits, losses, damages, costs, fees, expenses, and controversies, whether arising under local, state, tribal, foreign, territorial or federal law (including, without limitation, under any consumer

protection or unfair and deceptive practices laws) or equity, whether by constitution, statute, rule, regulation, any regulatory promulgation, contract, tort, common law, or any other theory of action, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, matured or un-matured, contingent or fixed, accrued or unaccrued, punitive or compensatory, choate or inchoate, liquidated or unliquidated, based on any fact known or unknown, including without limitation those that arise out of or relate in any way to any or all of the claims, causes of action, acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged, described, set forth, referred to, or asserted in the Action, as well as including any claims known or unknown that each Settlement Class Member has or ever had against the Kellner Released Parties.

Raizada Released Parties. Plaintiff and each Settlement Class Member, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, shall have fully, finally and forever released and discharged the Raizada Released Parties from any and all rights, duties, obligations, demands, actions, causes of action, liabilities, claims, grievances, suits, losses, damages, costs, fees, expenses, and controversies, whether arising under local, state, tribal, foreign, territorial or federal law (including, without limitation, under any consumer protection or unfair and deceptive practices laws) or equity, whether by constitution, statute, rule, regulation, any regulatory promulgation, contract, tort, common law, or any other theory of action, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, matured or un-matured, contingent or fixed, accrued or unaccrued, punitive or compensatory, choate or inchoate, liquidated or unliquidated, based on any fact known or unknown, including without limitation those that arise out of or relate in any way to any or all of the claims, causes of action, acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged, described, set forth, referred to, or asserted in the Action, as well as including any claims known or unknown that each Settlement Class Member has or ever had against the Raizada Released Parties.

Seville Released Parties. Each Plaintiff and each Settlement Class Member, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, shall have fully, finally and forever released and discharged the Seville Released Parties from any and all rights, duties, obligations, demands, actions, causes of action, liabilities, claims, grievances, suits, losses, damages, costs, fees, expenses, and controversies, whether arising under local, state, tribal, foreign, territorial or federal law (including, without limitation, under any consumer protection or unfair and deceptive practices laws) or equity, whether by constitution, statute, rule, regulation, any regulatory promulgation, contract, tort, common law, or any other theory of action, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent,

matured or un-matured, contingent or fixed, accrued or unaccrued, punitive or compensatory, choate or inchoate, liquidated or unliquidated, based on any fact known or unknown, including without limitation those that arise out of or relate in any way to any or all of the claims, causes of action, acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged, described, set forth, referred to, or asserted in the Action, as well as including any claims known or unknown that each Settlement Class Member has or ever had against the Seville Released Parties.

Skye Released Parties. Each Plaintiff and each Settlement Class Member, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, shall have fully, finally and forever released and discharged the Skye Released Parties from any and all rights, duties, obligations, demands, actions, causes of action, liabilities, claims, grievances, suits, losses, damages, costs, fees, expenses, and controversies, whether arising under local, state, tribal, foreign, territorial or federal law (including, without limitation, under any consumer protection or unfair and deceptive practices laws) or equity, whether by constitution, statute, rule, regulation, any regulatory promulgation, contract, tort, common law, or any other theory of action, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, matured or un-matured, contingent or fixed, accrued or unaccrued, punitive or compensatory, choate or inchoate, liquidated or unliquidated, based on any fact known or unknown, including without limitation those that arise out of or relate in any way to any or all of the claims, causes of action, acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged, described, set forth, referred to, or asserted in the Action, as well as including any claims known or unknown that each Settlement Class Member has or ever had against the Skye Released Parties.

(*Id.* § 4.1.)

### f.  *Notice and Exclusions*

Class notice will be a combination of email notice to verified email addresses or U.S Mail to each Settlement Class Member.  If approved by the Court, the Settlement Administrator, American Legal Claims Services, will first email direct notice to Settlement Class Members at the most recent email address shown in the TLEs' electronic records, as maintained in the ordinary course of business, for each loan at issue.  (*Id.* § 5.3.a.)  If email notice results in a bounce-back email, direct notice will be mailed to Settlement Class Members via first class mail.  (*Id.* § 5.3.b.)  Prior to mailing, the Settlement Administrator will run mailing addresses once through the NCOA

or any other postal address verification database that the Administrator deems proper. (*Id.*) Returned direct notices will be re-mailed if they are returned within twenty days of the postmark date and contain a forwarding address. (*Id.*) Additionally, the Settlement Administrator will maintain and update the previous website, www.upperlakesettlement.com, on which pertinent information related to this settlement will be made available to Settlement Class Members, including the Class Action Complaint; the Settlement Agreement; any motions and memoranda seeking approval of the proposed class action settlement, approval of attorneys' fees and costs, or approval of service awards; and any orders of this Court relating to the proposed class action settlement. (*Id.* § 5.3.c.)

Any Settlement Class Member who wants to be excluded from the class must advise the Class Administrator in writing, and his or her opt-out request must be postmarked no later than the opt-out deadline. (*Id.* § 7.2.) The Settlement Class Member's opt-out request must contain the Settlement Class Member's full name, address, and telephone number. (*Id.*) Further, the Settlement Class Member must include a statement in the written request that he or she wishes to be excluded from the Settlement Agreement. (*Id.*) The request also must be signed by the Settlement Class Member. (*Id.*) Requests for exclusion that do not comply with any of the foregoing requirements are invalid. (*Id.*)

## III. ARGUMENT

### a. *Certification Standard*

Courts in the Fourth Circuit favor resolution of litigation before trial. *See, e.g.*, *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("The voluntary resolution of litigation through settlement is strongly favored by the courts." (citing *Williams v. First Nat'l Bank*, 216 U.S. 582 (1910))). Settlement spares the litigants the uncertainty, delay, and expense of a trial and appeals while reducing the burden on judicial resources. As the court observed in *Stone*:

> In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.

749 F. Supp. at 1423 (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980)).

Rule 23 permits courts to preliminarily certify a class to carry out a settlement of the case. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 793–94 (3d Cir. 1995) (collecting cases). A court may grant preliminary approval of a class action where the proposed class satisfies the four prerequisites of Rule 23(a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), as well as one of the three subsections of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). If the Court determines that a settlement class should be certified, it then should follow a three-step process before granting final approval of a proposed settlement. *Levell v. Monsanto Rsch. Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000).

First, the Court should preliminarily approve the proposed settlement. *Id.* at 547. Second, class members must be given notice of the proposed settlement. *Id.* Third, a final fairness hearing must be held, after which the Court should decide whether the proposed settlement is fair, adequate, and reasonable to the class as a whole, and consistent with the public interest. *Id.* This protects the class members' procedural due process rights and enables the Court to fulfill its role as the guardian of the class's interests. *Id.* Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). Additionally, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.*

Rule 23 governs the certification of class actions. In considering a settlement at the preliminary approval stage, the first question for the Court is whether a settlement class satisfies Rule 23's requirements, and thus may be conditionally certified for settlement purposes. Under Rule 23(a), one or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the class's interests. Fed. R. Civ. P. 23(a).

Here, the parties have reached a proposed agreement on behalf of the Settlement Class, which they respectfully request be preliminarily certified.

### b. The Settlement Class Meets the Certification Elements

#### i. The Settlement Class satisfies Rule 23(a)

##### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no set minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984). But where the class numbers 25 or more, joinder is usually impracticable. *See Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (holding 18 class members sufficient).

The numerosity requirement is easily met here. As detailed above, there are around 555,000 Settlement Class Members, including the named Plaintiffs. Joinder of this many individuals is neither possible nor practical, so the first prong of the certification test has been met. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003). Indeed, this Court has already found joinder impracticable based on the same class as the one here. *See Hengle*, No.

3:19-cv-250-DJN, ECF No. 209, at ¶ 4 (E.D. Va. May 12, 2022) ("The Court finds . . . that the following requirements are met: (a) the number of Settlement Class Members is so numerous that joinder is impracticable . . . ."); *Id.*, ECF No. 230, at ¶ 4 (E.D. Va. Oct. 25, 2022) (reaffirming certification findings on final approval).

2.     Commonality

Rule 23(a)(2) requires that the court find that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003). And the common issue must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The standard is a liberal one that cannot be defeated by the mere existence of some factual variances in individual grievances among class members. *Id.* at 322; *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) (finding that factual differences among class members will not necessarily preclude certification "if the class members share the same legal theory").

Here, by definition, the Settlement Class Members share multiple questions of law and fact. The Settlement Class Members are alleged to be the subject of a practice in which the lending enterprise, with Defendants' direct participation and support, charged usurious interest rates on consumer loans in violation of federal and state law. The practices at issue for this claim are identical across all class members. The theories of liability as to the Settlement Class Members therefore arise from the same practices and present basic questions of law and fact common to all members of the Settlement Class. *See* Fed. R. Civ. P. 23(a). As with numerosity, moreover, this Court has also already found that there are common questions of law and fact based on the same

14

class and nearly identical claims to those here. *See Hengle*, No. 3:19-cv-250-DJN, ECF No. 209, at ¶ 4 (E.D. Va. May 12, 2022) ("The Court finds . . . that the following requirements are met: . . . (b) there are questions of law and fact common to Settlement Class Members . . . ."); *Id.*, ECF No. 230, at ¶ 4 (E.D. Va. Oct. 25, 2022) (reaffirming certification findings on final approval); *see also Gibbs*, 2021 WL 4812451, at *13-14 (finding, on contested motion, that class of consumers raising RICO and state-law claims against TLEs presented common questions of law and fact).

3.      Typicality

In the typicality analysis, "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). "Nevertheless, the class representatives and the class members need not have identical factual and legal claims in all respects. The proposed class satisfies the typicality requirement if the class representatives assert claims that fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003). "The typicality requirement mandates that Plaintiffs show (1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Jeffreys*, 212 F.R.D. at 322. Commonality and typicality tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011).

Plaintiffs' claims arise from Defendants' practices for consumer loans. As discussed in the previous section, these are the same claims advanced on behalf of the Settlement Class Members, and Plaintiffs are members. Thus, in seeking to prove their claims, Plaintiffs will advance the

claims of Settlement Class Members.  This is the hallmark of typicality.  *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2001) (citing Fed. R. Civ. P. 23(a)(3)).  To remove any doubt, the Court has already found typicality among the same class based on the nearly identical claims raised in *Hengle*.  *See* No. 3:19-cv-250-DJN, ECF No. 209, at ¶ 4 (E.D. Va. May 12, 2022) ("The Court finds . . . that the following requirements are met: . . . (c) Plaintiffs' claims are typical of the claims of the Settlement Class Members . . . ."); *Id.*, ECF No. 230, at ¶ 4 (E.D. Va. Oct. 25, 2022) (reaffirming certification findings on final approval).

### 4.      Adequacy of Representation

"Finally, under Rule 23(a)(4), the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys*, 212 F.R.D. at 323.  "Basic due process requires that the named plaintiffs possess undivided loyalties to absent class members." *Fisher*, 217 F.R.D. at 212 (citing *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998)).

The adequacy of representation requirement is met here.  Plaintiffs understand and have accepted the obligations of a class representative, have adequately represented the interests of the putative class, and have retained experienced counsel who have handled many consumer-protection class actions.  Plaintiffs' lead counsel—which is the same counsel approved by this Court in *Hengle* (No. 3:19-cv-250-DJN, ECF Nos. 209, 230)—handled several consumer-protection and complex class actions, typically as lead or co-lead counsel.  *See, e.g.*, *Clark v. Trans Union, LLC*, No. 3:15-cv-391, 2017 WL 814252, at *13 (E.D. Va. Mar. 1, 2017) ("This Court echoes the sentiments previously stated about Clark's counsel because they pertain here with equal vigor."); *Campos-Carranza v. Credit Plus, Inc.*, No. 1:16-cv-120, ECF No. 80 at 5:3-7 (E.D. Va. Feb. 17, 2017) ("I think this is an extremely, as I say, extremely fair, reasonable, and adequate settlement. Again, the claims -- and I think being generous on the time limit for the claims was

also appropriate. So I have no difficulty in signing this order."); *Thomas v. FTS USA, LLC*, 312 F.R.D. 407, 420 (E.D. Va. 2016) ("[T]he Court finds that Thomas'[s] counsel is qualified, experienced, and able to conduct this litigation so as to fully and adequately represent both classes. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases around the country."); *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14-cv-238, 2016 WL 1070819, at *3 (E.D. Va. Mar. 15, 2016) ("[T]his Court would have difficulty overstating Class Counsel's experience in the area of FCRA class action litigation."); *Dreher v. Experian Info. Sols., Inc.*, No. 3:11-cv-624, 2014 WL 2800766, at *2 (E.D. Va. June 19, 2014) ("Dreher's counsel is well-experienced in the arena of FCRA class action litigation."); *Burke v. Seterus, Inc.*, No. 3:16-cv-785, ECF No. 41 at 9:19-22 (E.D. Va. 2017) ("Experience of counsel on both sides in this case is extraordinary. Ms. Kelly and Ms. Nash and their colleagues are here in this court all the time with these kinds of cases and do a good job on them."); *James v. Experian Info. Sols., Inc.*, No. 3:12-cv-902 (E.D. Va. Oct. 29, 2014) (ruling on final approval in open court and finding "experience of counsel on both sides is at the top level of representation in cases of this sort and, indeed, perhaps beyond that"); *Soutter v. Equifax Info. Servs., LLC*, No. 3:10-cv-107, 2011 WL 1226025, at *10 (E.D. Va. Mar. 30, 2011) ("[T]he Court finds that Soutter's counsel is qualified, experienced, and able to conduct this litigation. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as Class Counsel in numerous cases."); *see also* Declaration of Kristi Kelly ("Kelly Decl.") ¶¶ 9-10 (attached as Ex. 1); Declaration of Leonard A. Bennett ("Bennett Decl.") ¶¶ 3-23 (attached as Ex. 2).

Plaintiffs have no antagonistic or conflicting interests with the Settlement Class Members. Plaintiffs and the Settlement Class Members alike seek monetary relief for Defendants' allegedly

unlawful actions. Plaintiffs are members of the Settlement Class. Considering the identity of claims, there is no potential for conflicting interests. Plaintiffs also have been very active here, including successfully responding to nine motions to dismiss and engaging in multiple rounds of settlement discussions. (*See* Ex. 1, Kelly Decl. ¶¶ 11-15.) As a result, the Settlement Class Members are adequately represented to meet Rule 23's requirements.

ii.    *The Settlement Class satisfies Rule 23(b)(3)*

The proposed settlement contemplates permitting opt-outs under Rule 23(b)(3). An action may be maintained as a class action if the four Rule 23(a) elements described above are satisfied, and in addition, "the Court finds that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a Class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This Court has already found these requirements satisfied based on the same class and nearly identical claims in *Hengle*. *See* No. 3:19-cv-250-DJN, ECF No. 209, at ¶ 4 (E.D. Va. May 12, 2022) ("The Court finds . . . that the following requirements are met: . . . (e) the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; and (f) a class action provides a fair and efficient method for settling the controversy under the criteria set forth in Rule 23 and is superior to alternative means of resolving the claims and disputes at issue in this Action."); *Id.*, ECF No. 230, at ¶ 4 (E.D. Va. Oct. 25, 2022) (reaffirming certification findings). So too here.

1.    Predominance

If the Settlement Class is to be certified under Rule 23(b)(3), the common issues of law and fact shared by the Settlement Class Members must "predominate" over individual issues. Rule 23(b)(3)'s predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362

(4th Cir. 2004); *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 142 (4th Cir. 2001). This criterion is normally satisfied when there is an essential, common factual link between all class members and the defendants for which the law provides a remedy. *Talbott*, 191 F.R.D. 99, 105 (W.D. Va. 2000) (citing *Halverson v. Convenient FoodMart, Inc.*, 69 F.R.D. 331 (N.D. Ill. 1974)). And predominance exists where the resolution of class members' individual claims depends on examining common conduct by a defendant. *Jeffreys*, 212 F.R.D. at 323 (finding predominance because class members' claims were based on same acts by defendant and the determinative "question in each individual controversy" was common).

The predominance requirement is satisfied here because the essential factual and legal issues for the Settlement Class Members' claims are common and relate to alleged standardized practice. *Talbott*, 191 F.R.D. at 105 ("Here, common questions predominate because of the standardized nature of [defendant's] conduct."). Nothing more is necessary to satisfy predominance. Indeed, under nearly identical circumstances where, as here, a consumer class sued a non-tribal investor under RICO and for unjust enrichment, the Fourth Circuit has similarly found that common questions of law and fact predominate based on the standardized treatment of the Class and the common proof required to establish liability. *See Williams v. Martorello*, 59 F.4th 68, 85-92 (4th Cir. 2023); *see also Gibbs*, 2021 WL 4812451, at *16-20 (finding, on contested motion, that common questions of law and fact predominated under similar circumstances).

### 2.  Superiority

Finally, the Court should determine whether a class action is superior to other methods for the fair and efficient adjudication of this controversy under Rule 23(b)(3). The factors to be considered here in determining the superiority of the class mechanism are: (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability

of concentrating the litigation in one forum; and (4) manageability.[3]  *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997); *accord Newsome v. Up To Date Laundry, Inc.*, 219 F.R.D. 356, 365 (D. Md. 2004).

Efficiency is the primary focus in determining whether a class action is indeed the superior method of adjudicating the controversy.  *Talbott*, 191 F.R.D. at 106.  In examining these factors, it is proper for a court to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually."  *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

In *Jeffreys*, for instance, the court found that because "the facts and issues involved are identical for all class members, class members have little incentive and few resources to pursue litigation on their own, the class members are dispersed over several states, and there are few manageability concerns, the class action is the best method of resolving the matter."  212 F.R.D. at 323.  The same is true here.  Common issues predominate.  And the Settlement Class Members' individual claims are small, thus providing little incentive for individual litigation.  *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997))).

A class action is superior to other available methods for the fair and efficient adjudication of the case because a class resolution of the issues described above outweighs the difficulties in management of separate, individual claims and allows access to the courts for those who might

---

[3] A trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23. *Amchem*, 521 U.S. at 620. Thus, this criterion is not material to the Court's analysis in this posture.

not gain such access standing alone, particularly given the small amount of the damage claims that would be available to individuals. Moreover, apart from the fact that the proposed class action settlement allows a recovery of actual damages, certification permits individual claimants to opt-out and pursue their own actions separately if they believe they can recover more in an individual suit. Thus, both predominance and superiority are satisfied. *See Gibbs*, 2021 WL 4812451, at *20 (Lauck, J.) (finding predominance and superiority satisfied under nearly identical circumstances on a contested class certification motion). For these reasons, the Court should conditionally certify the Settlement Class for settlement purposes.

### c. The Settlement Satisfies the Requirements of Rule 23(e)(2)

"Rule 23(e) of the Federal Rules of Civil Procedure obliges parties to seek approval from the district court before settling a class-action lawsuit." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 483 (4th Cir. 2020) (citing Fed. R. Civ. P. 23(e)). When a court "reviews a proposed class-action settlement, it acts as a fiduciary for the class." *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022). "In fulfilling this role, the district court must conclude that a proposed settlement is 'fair, reasonable, and adequate,'" which are the three requirements established by Rule 23(e)(2) of the Federal Rules of Civil Procedure. *Id.* (citing Fed. R. Civ. P. 23(e)(2)). "In determining whether a settlement is fair, reasonable, and adequate," Rule 23(e)(2) requires the court to consider:

> (A)      the class representatives and class counsel have adequately represented the class;
>
> (B)      the proposal was negotiated at arm's length;
>
> (C)      the relief provided for the class is adequate, taking into account:
>
>         (i)      the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorneys' fees, including timing of payments; and

(iv) any agreement required to be identified under Rule 23(e)(3);

(D) the proposal treats class members equitably relative to each other.

*Galloway v. Williams*, 2020 WL 7482191, at *4 (E.D. Va. 2020) (quoting Fed. R. Civ. P. 23(e)(2)). In making this assessment, district courts are provided with "considerable deference" because "the court 'is exposed to the litigants, and their strategies, position[s], and proofs, and is on the firing line and can evaluate the action accordingly.'" *Lumber Liquidators*, 952 F.3d at 484 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000)).

> i. *Plaintiff and Class Counsel Have Adequately Represented the Class.*

Rule 23(e)(2)'s first factor examines whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This assessment is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." *In re Flint Water Cases*, 571 F. Supp. 3d 746, 780 (E.D. Mich. 2021) (quoting Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 13:48 (5th ed. June 2021 update)). Rule 23's adequacy requirements are met if: "(1) the named plaintiff has interests common with, and not antagonistic to, the Class'[s] interests; and (2) the plaintiff's attorney is qualified, experienced and generally able to conduct the litigation." *Gibbs v. Stinson*, 2021 WL 4812451, at *16 (E.D. Va. Oct. 14, 2021) (quoting *Milbourne v. JRK Residential Am., LLC*, 2014 WL 5529731, at *8 (E.D. Va. Oct. 31, 2014)).

This first factor is easily satisfied. Plaintiffs' interests and those of Class Members are fully aligned as they were all subjected to the same unlawful lending practices. *See, e.g.*, *Stinson*, 2021 WL 4812451, at *16 (finding that the plaintiffs were adequate because they had "no interests

antagonistic to the class's interest" and shared "identical interest of establishing Defendants' liability based on the same questions of law and fact").

Additionally, Class Counsel has been practicing in the field of consumer protection for more than 15 years, and they believe that this settlement stacks up very favorably when compared to other settlements over that time. (*See* Ex. 1, Kelly Decl. ¶¶ 3-10, 13-15; Ex. 2, Bennett Decl. ¶¶ 24-29.) This is particularly true when considering that the relief afforded by the Settlement in this case follows the substantial relief already awarded to the Class under the terms of the *Hengle* settlement. Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See*, *e.g.*, *In re MicroStrategy*, 148 F. Supp. 2d at 665.

Given the substantial relief afforded the proposed settlement—especially when contrasted against the risks associated with litigating this matter—it is fair and appropriate for approval. *See S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (concluding fairness met where "discovery was largely completed as to all issues and parties," settlement discussions "were, at times, supervised by a magistrate judge and were hard fought and always adversarial," and those negotiations "were conducted by able counsel" with substantial experience).

> ii. *Negotiations Were at Arm's Length and Involved a Respected Mediator.*

The second factor examines whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B); *see also Flint Water Cases*, 571 F. Supp. 3d at 780 (explaining that the second factor requires courts to "consider whether the negotiations were conducted at arm's length with no evidence of collusion or fraud"). "Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *Id.* (quoting *UAW v. Gen. Motors, Corp.*, 2006 WL 891151, at

*21 (E.D. Mich. Mar. 31, 2006)).  Here, there is no evidence suggesting the presence of collusion or fraud between the parties.

To help confirm that negotiations were at arm's length, courts look at several other factors, including the presence of a mediator.  As the leading class action treatise explains: "There appears to be no better evidence of [a truly adversarial bargaining process] than the presence of a third-party mediator."  Conte & Newberg, *supra*, § 13:48; *see also Flint Water Cases*, 571 F. Supp. 3d at 780 ("highly experienced mediators" provide "ample protections in their roles").  Here, Plaintiffs and Defendants held several rounds of negotiations and appeared for several settlement conferences before the Honorable Mark R. Colombell, United States Magistrate Judge, to help reach the terms of their agreement.  (*See* Kelly Decl. ¶ 14.)  The involvement of Judge Colombell establishes that there was no collusion among the parties.

### iii. The Relief Provided to the Class is Adequate.

Rule 23(e)(2)(C) requires the Court to consider whether the relief is adequate, considering:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C).  These subfactors overlap with the factors that the Fourth Circuit has held are required to evaluate a class settlement's fairness, reasonableness, and adequacy.  *Lumber Liquidators*, 952 F.3d at 484 n.8 (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)).  An analysis of each factor shows that this settlement is fair, reasonable, and adequate.

The first Rule 23(e)(2)(C) sub-factor requires the Court to evaluate the settlement against the costs, risks, and delay of trial and appeal.  This factor strongly supports approval of the settlement. While Class Counsel strongly believes in the strength of this case, they also acknowledge that there are substantial risks associated with continued litigation.  Defendants have

disputed Plaintiffs' claims since the inception of this case and have raised several defenses, including thorny factual disputes over the degree and nature of their alleged involvement in the lending enterprise. Were the litigation to continue, Defendants would no doubt rely heavily on their defenses, which are largely subject to jury determination, to avoid liability. The Settlement avoids this significant cost, risk, and time by providing significant settlement benefits to the Class Members now.

Rule 23(e)(2)(C)'s second sub-factor requires the Court to evaluate the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims. Here, just as with the prior settlement (any multiple other similar settlements approved by this Court), Class Members will receive the cash benefits based on the unlawful amount repaid on their loans—without having to submit a claim form or any proof of their damages. Thus, cash payments will be automatically distributed. This is important because "[t]he use of objective criteria to determine settlement distribution is a hallmark of fairness." *Flint Water Cases*, 571 F. Supp. 3d at 781. Because an automatic cash payment is based on objective criteria and does not require any action by Class Members, this factor weighs strongly in favor of approving the settlement.

Rule 23(e)(2)(C)'s third sub-factor requires the Court to evaluate the request for attorneys' fees, including the timing of the request. The focus of this analysis is whether there are signs that "counsel sold out the class's claims at a low value in return for [a] high fee." Conte & Newberg, *supra*, § 13:54. There are no such indications here. As outlined above, there is no sign that Class Counsel left any money on the negotiating table. Instead, they have obtained over $25 million for automatic payments to Class Members who meet objective criteria, which is in addition to the $39

million in payments and $450 million in cancelled debt obtained for the same Class Members in *Hengle*. This is significant, additional consideration for the Class Members' claims.

It is also important to note that the attorneys' fee component of the settlement was negotiated under the supervision of Judge Colombell, who would notice if Class Counsel were compromising the class members' claims for their own benefit. *Flint Water Cases*, 571 F. Supp. 3d at 782. As to the timing of the attorney fee award request, "courts are to consider this to prevent situations in which the request for attorney fees is unknown and could upset the compensation to claimants at the time of final approval." *Id.* There is no such concern here as the proposed Notice to the Settlement Class will identify the requested attorneys' fees.

Finally, there are no agreements that need to be identified under Rule 23(e)(3).

    iv. *The Settlement Treats Class Members Equitably Related to Each Other.*

The final factor under Rule 23(e)(2) requires a court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D) (emphasis added). This factor considers whether class members have been treated in a fair and impartial manner, but "[t]here is no requirement that all class members in a settlement be treated equally." *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 876 (S.D. Iowa 2020) (emphasis in original) (citation omitted). And when considering this factor, a court "must balance the claims of those with potentially substantial damages with those with potentially minimal or insignificant damages." *Id.* (citation omitted).

The Settlement here achieves this balance. Although making an additional $25 million available to the Class in the form of cash payments, as in *Hengle*, the Settlement limits payments to only those Members who made unlawful payments on their loans based on the legal protections of their respective states of residence. The Settlement further awards payments on a *pro rata* basis

after considering the amount of each qualifying Class Member's payments above the lawful amount in their respective states. The Settlement thus maximizes the possible payout for Class Members who have suffered actual monetary harm, while preserving the class-wide cancellation of debt from *Hengle*. Moreover, all Class Members will obtain the benefit of Defendants' agreement to refrain from supporting the collection of the unlawful debts, regardless of whether any payments have been made on those debts. Class Members, therefore, will be treated equitably relative to each other.

### d.    The Proposed Notice and Notice Plan Satisfy Rule 23

Following preliminary approval, the class members must be given notice about the nature of the settlement and of their rights. Rule 23(e)(1) requires that: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) sets forth the contents of a notice to be sent to members of a Rule 23(b)(3) class:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notice to the Settlement Class, which is an Exhibit to the Settlement Agreement, and the notice program for delivering that notice satisfy these requirements. (Settlement Agreement § 5.3.) Indeed, the Court in *Hengle* approved the same notice plan and a very similar notice to the one here. No. 3:19-cv-250-DJN, ECF No. 209, at ¶¶ 8-13.

As in *Hengle*, the proposed notice program here will provide individual direct notice. Under the Settlement Agreement, the Settlement Administrator will first email direct notice to each Settlement Class Member at his or her most recent email address shown in the TLEs' loan

records or as updated as a result of the *Hengle* settlement as maintained by the Administrator, as maintained in the ordinary course of business, for each loan at issue. (*Id.* §§ 3.3(b)(iii)(2), 5.3.a.) If email notice results in a bounce-back email, direct notice will be mailed to Settlement Class Members via first class mail and returned direct notices will be re-mailed if they are returned within twenty days of the postmark date and contain a forwarding address. (*Id.* § 5.3.b.) The Administrator also will update and continue to maintain the previous website, www.upperlakesettlement.com, on which pertinent information will be made available to Settlement Class Members, including the operative complaint; the Settlement Agreement; any motions and memoranda seeking approval of the proposed class action settlement, approval of attorneys' fees and costs, or approval of service awards; and any orders of this Court relating to the proposed class action settlement. (*Id.* § 5.3.c.)

The Settlement's robust notice and administration plan will ensure the most Settlement Class Members receive the payments to which they are entitled. Class Notice will be sent in accordance with Federal Rule of Civil Procedure 23(c) in the manner approved by the Court by a combination of email notice to verified email addresses or U.S. Mail to each Settlement Class Member identified on the Class List.

As the *Manual for Complex Litigation* recognizes, mail notice is the ideal method of informing class members of a class settlement where such members can be identified, while notice through an internet website is a supplemental means of providing notice. *See* Manual for Complex Litigation § 21.311; *see also Henggeler v. Brumbaugh & Quandahl P.C.*, No. 8:11-cv-334, 2013 WL 5881422, at *5 (D. Neb. Oct. 25, 2013) ("The court finds that the proposed notice is clearly designed to advise the class members of their rights. The Agreement provides for individual mailed notices to each of the class members. Individual notice is the best notice practicable.").

For these reasons, the proposed Notices and Notice Plan represent the "best notice that is practicable under the circumstances," and they therefore meet the notice requirements of Rule 23. The Notices and Notice Plan should thus be approved by the Court.

## IV.    CONCLUSION

The proposed class action settlement is an excellent result considering the circumstances of the litigation, the strength of Plaintiffs' case, and the resources of certain defendants. The terms of the proposed class action settlement, as well as the circumstances of negotiations and its elimination of further costs caused by litigating this case through trial and appeal, satisfy the structures for preliminary approval.

For these reasons, Plaintiffs respectfully request that the Court issue an Order that: (1) grants preliminary approval to the proposed settlement; (2) approves of the Proposed Notice filed concurrently with the Motion for Preliminary Approval; (3) orders that the Proposed Notice be immediately mailed to Settlement Class Members; (4) approves the appointment of American Legal Claims Services as the Settlement Administrator; and (5) sets the date of the Final Fairness Hearing at the Court's earliest availability, but no sooner than 120 days from the date of the granting of this Motion.

Respectfully submitted,

**PLAINTIFFS**

 */s/ Kristi C. Kelly*
Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7570
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

Leonard A. Bennett, VSB #37523
Craig C. Marchiando, VSB #89736
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

*Counsel for Plaintiffs*